**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-00594-REB-KMT

HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation,

    Plaintiff,

v.

SAMUEL ENGINEERING, INC., a Colorado corporation,

    Defendant.

## ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the following: (1) **Plaintiff/Counterclaim Defendant Hartford Casualty Insurance Company's Motion for Summary Judgment** [#20][1] filed July 22, 2013; and (2) **Samuel Engineering Inc.'s Cross-Motion for Determination of Law** [#21] filed July 22, 2013. Both parties filed responses [#22], and [#23] and the plaintiff filed a notice of supplemental authorities [#27]. I deny the motion filed by Hartford and grant the motion filed by Samuel Engineering.[2]

## I. JURISDICTION & CONTROLLING LAW

I have jurisdiction over this case under 28 U.S.C. § 1332 (diversity). The plaintiff

---

[1] "[#20]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

asserts claims under the common law of the state of Colorado. Colorado law controls the resolution of the substantive issues in this diversity case. ***Erie Railroad Co. v. Tompkins***, 304 U.S. 64, 78 (1938); ***Royal Maccabees Life Insurance Co. v. Choren***, 393 F.3d 1175, 1180 (10th Cir. 2005). Federal law controls procedural issues. ***See, e.g., Sims v. Great American Life Ins. Co.***, 469 F.3d 870, 877 (10th Cir. 2006).

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326

2

(10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999); **Nutting v. RAM Southwest, Inc.**, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  INTERPRETATION OF INSURANCE CONTRACTS

This case hinges on an interpretation of two Hartford insurance policies to determine if Hartford has a duty to defend the defendant in two other lawsuits.  In this diversity action, Colorado law provides the principles by which the policies must be interpreted.  **Leprino Foods Co. v. Factory Mut. Ins. Co.**, 453 F.3d 1281, 1287 (10th Cir. 2006).

Under Colorado law, insurance contracts are to be construed in accordance with the general laws of contracts. **Federal Deposit Ins. Corp. v. American Casualty Co.**, 843 P.2d 1285, 1289 (Colo. 1992); **Marez v. Dairyland Ins. Co.**, 638 P.2d 286, 288 - 289 (Colo. 1981), **overruled on other grounds**, **Friedland v. Travelers Indem. Co.**, 105 P.3d 639, 642-643 (Colo. 2005).  An insurance contract must be interpreted according to the plain and ordinary meaning of its language. **Kellogg v. Metro. Life Ins. Co.**, 549 F.3d 818, 829 (10th Cir. 2008); **Chacon v. American Family Mut. Ins. Co.**, 788 P.2d 748, 750 (Colo. 1990).  When the language used in a contract is plain and its meaning is clear, the agreement must be enforced as written. **In re May,** 756 P.2d 362, 368 (Colo. 1998); **Fire Ins. Exch. v. Rael by Rael**, 895 P.2d 1139, 1142 (Colo. App. 1995).

Courts should be wary of rewriting contract provisions and should give the words

contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced within the contract itself. *See, e.g., Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 902 (10th Cir. 2006) (noting that courts should not rewrite insurance policy provisions that are clear and unambiguous) (citations omitted); *Cyprus Amax Materials Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (courts should give the words contained in an insurance policy their plain and ordinary meaning). Courts may neither add provisions to extend coverage beyond that contracted nor delete provisions to limit coverage. *Cyprus Amax*, 74 P.3d at 299. When interpreting a policy's provisions, a court's construction "must be fair, natural, and reasonable rather than strained and strictly technical." *Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 825 (Colo.App. 2007) (*citing Pub. Serv. Co. v. Wallis & Cos.*, 986 P.2d 924, 939 (Colo. 1999)).

When an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden or proving that a particular loss falls within an exclusion in the contract. *Colorado Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008). If a limitation or exclusion in an insurance contract is unambiguous, then that limitation or exclusion must be enforced. *Id*.

In a dispute concerning an insurer's duty to defend against a claim asserted against its insured in a civil suit, Colorado applies the "complaint rule." This rule provides that the allegations of the relevant complaint against the insured, together with the language of the relevant insurance policy, provide the bases for evaluating whether an insurer has a duty to defend. *Lopez v. American Family Mut. Ins. Co.*,

4

148 P.2d 438, 439 (Colo. App. 2006); ***Cotter v. American Empire Sur. Lines, Ins. Co.***, 90 P.3d 814 (Colo. 2004).

> We have long held that to determine whether a duty to defend exists, courts must look no further than the four corners of the underlying complaint (the "four corners" or "complaint" rule). ***See Hecla Mining Co. v. N.H. Ins. Co.,*** 811 P.2d 1083, 1089 (Colo.1991). An insurer is not excused from this duty "unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." ***Id***. at 1090. Hence, if the alleged facts even potentially trigger coverage under the policy, the insurer is bound to provide a defense. ***Constitution Assoc. [v. N.H. Ins. Co.***, 930 P.2d [556, 563 (Colo 1986)]; ***Hecla***, 811 P.2d at 1089.

***Cyprus Amax Minerals Co. v. Lexington Ins. Co.***, 74 P.3d 294, 299 (Colo. 2003).

> An insurer's duty to defend arises when the underlying complaint against the [insured] alleges any facts that might fall within the coverage of the policy. The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend. Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy. [W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.
>
> \* \* \* \*
>
> The insurer has a duty to defend unless the insurer can establish that the allegations in the complaint are solely and entirely within the exclusions in the insurance policy. An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured.

***Hecla Mining Co. v. New Hampshire Ins. Co.***, 811 P.2d 1083, 1089 - 1090 (Colo. 1991) (internal quotations, citations, and footnote omitted).

### III. FACTS

In December 2009, the defendant, Samuel Engineering, Inc., was working on the expansion of the Sifto salt mine in Ontario, Canada. Included in the project was the

design and construction of a salt storage facility known as Dome #5.  On December 10, 2009, during high winds, the partially constructed Dome #5 catastrophically failed and collapsed.  As a result of the collapse of Dome #5, Samuel is named as a defendant in two lawsuits filed in December 2011 in the Ontario Superior Court of Justice, Toronto, Ontario (the Canadian Litigation).

Samuel tendered the claims in the Canadian Litigation to CNA, its professional liability insurer.  CNA issued a reservation of rights letter and appointed defense counsel for Samuel, but declined to pay for defense costs until Samuel meets its 250,000 dollar deductible.

Samuel then tendered the claims against Samuel in the Canadian Litigation to plaintiff, Hartford Casualty Insurance Company.  Hartford had issued commercial general liability insurance policies to Samuel.  Hartford is defending Samuel in the Canadian cases under a reservation of rights.  In the present case, Hartford seeks declaratory judgments concerning coverages under the Hartford policies.

In its motion for summary judgment, Hartford seeks judgment on its third claim for relief.  In that claim, Hartford seeks a judgment declaring that Hartford does not have a duty to defend or a duty to indemnify Samuel on  the claims asserted against Samuel in the Canadian Litigation.

### A.  Hartford Policies

Hartford issued two commercial general liability insurance policies to Samuel, effective from January 5, 2009, through January 5, 2010.  Both policies carried the policy number 35 SBA PF4153.  The policies are (1) a Business Liability Coverage Form (Business Policy); and (2) an Umbrella Liability Provisions (Umbrella Policy).

*Motion for summary judgment* [#20], Exhibits 1 (Business Policy) and 2 (Umbrella Policy).  In its motion for summary judgment, Hartford cites certain exclusions in the policies and argues that these exclusions bar coverage of Samuel in the Canadian Litigation.

In its motion for summary judgment, Samuel contends that the claims and allegations in the complaints in the Canadian litigation include claims that are covered arguably by the Hartford policies.  Because some claims arguably fall within the coverage provided by the Hartford policies, Samuel contends, Hartford has a duty to defend Samuel in the Canadian Litigation.

### B.  Claims in the Underlying Lawsuits

In determining whether Hartford has a duty to defend Samuel, the court must review the allegations and claims made against Samuel in the two, underlying Canadian lawsuits.  In the first case filed by Process Group, Inc., Samuel faces claims asserted by Process Group and cross-claims asserted by Sifto.

In its complaint, Process Group, Inc. alleges Samuel was retained to design and provide engineering, procurement, construction management, and start-up / commissioning for the project.  *Motion for summary judgment* [#20], Exhibit 5 (Process Group Complaint), ¶ 10.

> The engineering services included the preparation of design drawings and specifications.  The construction management services included supervision of construction and co-ordinating, scheduling and overall responsibility for construction activity for the project. [Stanley] was also retained as required under the provisions of the Ontario Building Code, to carry out general field reviews which entail the engineer carrying out sufficient observations and sampling to be satisfied that the structure as constructed met the design intent, was substantially in accordance with design drawings and complied with all codes and regulations in effect in the Province of Ontario.

7

*Id.*

Process Group asserts claims against Samuel for negligent design, negligence in selection of materials, failure to specify construction sequence, failure to carry out general review of construction, negligence in directing construction/developing procedures for erection, failure to review documents (fabrication, erection, and shop drawings), failure to alert, warn, or provide guidance, and negligence in allowing management and decision making to be controlled from the head office in Colorado rather than on-site in Ontario.  *Process Group Complaint*, ¶ 30 a - o.

In its cross-claims, Sifto alleges that Samuel agreed to provide engineering, procurement, and construction management services to Sifto.  *Motion for summary judgment* [#20], Exhibit 6 (Sifto Cross-claim), ¶ 11.  Sifto describes the broad scope of work assigned to Samuel.  *Id.,* ¶ 11. The claims of Sifto include breach of the agreement between Sifto and Samuel and negligence claims alleging that the work of Samuel was defective and incomplete in various ways.  *Id.*, ¶¶ 17 - 36.  Some of these claims concern mechanical devices that were part of the project, such as a claim that Samuel allowed a drive to be exposed to water, causing damage, defects in the work of Samuel related to site drainage, and defects and deficiencies in work related to concrete and "civil works."  *Id.*, ¶¶ 30 - 33,

In the second case, Samuel faced claims asserted by Flynn Canada, Ltd. and one or more cross-claims asserted by Lassing Dibben Consulting Engineers Ltd. and Harold Dibben.[3]   Flynn alleged that the failure of Dome #5 was caused by negligence, breach of statutory duty, breach of bailment, beach of duty to warn, negligent

---

[3]  Hartford indicates that the Flynn litigation has been resolved by settlement.

misrepresentation, tort of trespass, and breach of agreement. *Motion for summary judgment* [#20], Exhibit 3 (Flynn Complaint), ¶ 29. Flynn's claims included allegations of failure to construct and brace the dome property, failure to design the dome to withstand site conditions, failure to provide adequate plans and specifications, failure to provide a design compliant with applicable regulations and codes, failure to obtain necessary permits, failure to erect the building in accordance with the plans, failure to properly monitor, supervise, and inspect the design and construction of the building, failure to provide construction management and project management services in accordance with industry standards, failure to warn about the risks of structural failure, negligently representing that the site was safe and secure, failure to employ competent employees, and failure to ensure that Samuel's professional engineers were properly licensed and trained.

## C. Relevant Policy Provisions

In its motion, Hartford cites four policy provisions which, in the view of Hartford, exclude coverage of Samuel for all of the claims made in the Canadian Litigation. The provisions cited by Hartford are (1) the professional services exclusion; (2) the contemporaneous damage exclusions or damage to property exclusions; (3) the care, custody, or control exclusion; and (4) the impaired property exclusions.[4] Samuel contends these exclusions do not exclude coverage for all claims asserted in the Canadian Litigation.[5]

---

[4] The specific language of each exclusion is provided *infra*.

[5] In its motion, Samuel discusses additional exclusions. Ultimately, analysis of these additional exclusions is not necessary.

## IV. ANALYSIS

When interpreting the exclusions cited by Hartford, I have examined the policy language in question and the complaints and cross-claims in the Canadian Litigation. Applying the complaint rule, I have examined the pleadings in these two cases to determine for each case whether there are allegations that state a claim which is potentially or arguably within the coverage of the Business Policy or the Umbrella Policy. In determining whether Hartford has a duty to defend in either of the Canadian cases, I need not determine which specific claims ultimately are covered or not covered by the policies. Each of the exclusions on which Hartford relies is introduced by a clause in the policy such as "(t)his insurance does not apply to" or "(t)his policy does not apply to." *Business Policy*, ¶ B.1; *Umbrella Policy*, ¶ B.

### A. The Professional Services Exclusion

Hartford cites the professional services exclusion of the Business Policy, contending that this exclusion bars all coverage for the claims asserted in the Flynn and Process Group cases. The professional services exclusion is stated in paragraph B.1.j of the Business Policy. Specifically, Hartford relies on the language of the professional services exclusion shown in the excerpt below:

> **j.    Professional Services**
>
> "[P]roperty damage" or "personal and advertising injury" . . . arising out of the rendering of or failure to render any professional service. This includes but is not limited to:
>
> \*\*\*\*\*
> (2)    Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications;
>
> (3)    Supervisory, inspection, architectural or engineering activities.

*Business Policy*, ¶ B.1.j.

According to Hartford, all of the claims in the Canadian Litigation fall within one of these two definitions of professional services because all of the claims and losses alleged in the Canadian Litigation arise from Samuel's professional engineering or supervisory services. In the view of Hartford, the language "arising out of the rendering of or failure to render professional services" creates a but for causation test, meaning that but for the professional services, the alleged injury would not have occurred. According to Hartford, when all of the conduct alleged in the underlying complaints, both professional and non-professional, would not have occurred in the absence of the professional or supervisory services of the insured, the professional services exclusion excludes coverage for all such conduct.

In response, Samuel contends that the professional services exclusion does not apply to all of the actions or failures to act alleged against Samuel in the Canadian Litigation. Samuel contends that some of the allegations in the underlying litigation "may arise from engineering design, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications. Other allegations may arise from Samuel's administrative role or merely its coincidental involvement in the project." *Motion* [#21], p. 10. In the view of Samuel, administrative tasks or Samuel's coincidental involvement in the project do not constitute professional services and, therefore, do not fall within the professional services exclusion.

I reject the contention of Hartford that the phrase "arising out of," as used in the exclusion, causes the exclusion to cover non-professional activities that are tied in some way to professional services. The phrase "arising out of" means "originating from,

growing out of, or flowing from" a certain cause.  *See, e.g., Mgmt. Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 37 (Colo. Ct. App. 2004).  The professional services exclusion uses the phrase "arising out of" to describe damage or injury.  The phrase does not describe the incipient cause of the damage or injury – in this case professional services.  The use of the phrase "arising out of" in the professional services exclusion does not broaden the meaning of the key term "professional services" to include all non-professional services related in any way to the excluded professional services.

I reject also the contention of Samuel that the terms "supervisory" and "inspection" are ambiguous as used in the professional services exclusion.  A contract is ambiguous only if it is reasonably susceptible of more than one meaning.  *Home Engineering*, 72 P.3d at 453.  "In ascertaining whether certain provisions of a document are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement." *Kane v. Royal Ins. Co. of America*, 768 P.2d 678, 680 (Colo.1989). Having examined the relevant language of the professional services exclusion, I conclude that the terms supervisory and inspection are not ambiguous.  Rather, those two terms have generally accepted meanings which are readily applicable in the context of the exception.

Many of the claims in the Canadian Litigation fall easily within the professional services exclusion.  For example, the claim for failure to design the dome to withstand site conditions and the claim for failure to provide adequate plans and specifications fall readily within the policy definition of professional services.  On the other hand, claims such as the claim for failure to erect the building in accordance with the plans and the

12

claim for defects and deficiencies in the work performed by Samuel related to site drainage issues do not necessarily fall within the scope of professional services, as defined in the professional services exception.  Negligence in erecting the building and deficient work related to site drainage do not necessarily involve the approval of plans or drawings and do not necessarily involve supervisory, inspection, architectural or engineering activities by Samuel.  Based on the allegations in the complaints in the Canadian Litigation, these claims and others may or may not fall within the professional services exclusion, depending on the evidence presented in the Canadian Litigation and the ultimate findings of the Canadian courts.   However, in both the Process Group case and the Flynn case, some claims potentially or arguably fall outside of the professional services exclusion.

## B.  The Damage to Property Exclusions

Hartford cites exclusions it labels as the contemporaneous damage exclusions in the Business Policy and contends these exclusions bar all coverage for the claims asserted in the Flynn and Process Group cases.  The contemporaneous damage exclusion is stated in paragraph B.1.k of the Business Policy.  Hartford relies on the language of the contemporaneous damage exclusion shown in the excerpt below:

> **k.     Damage to Property**
>
> "Property damage" to:
>
> *****
>
> (5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly preformed on it.

>  \*\*\*\*\*
>  Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

*Business Policy*, ¶ B.1.k.  The policy defines "property damage" to include "(p)hysical injury to tangible property, including the resulting loss of use of that property," and "(l)oss of use of tangible property that is not physically injured."  *Business Policy*, ¶ G.20.

The Flynn Complaint alleges damages in the form of loss of equipment and equipment rental fees.  *Flynn Complaint*, ¶¶ 34 - 35.  These alleged damages are not damages to real property as specified in paragraph k.(5); nor are they damages to property that was damaged because the work of Samuel was not performed correctly on that property as specified in paragraph k.(6).  The Sifto cross-claims in the Process Group case include claims alleging exposure of machinery to water and defective work related to maintenance access to machinery.  Comparing these Sifto claims to this policy exclusion, the damages alleged potentially or arguably fall outside of the contemporaneous damage exclusions. Some of the claims for damages in both the Process Group case and the Flynn case potentially or arguably fall outside of the contemporaneous damage exclusions.

### C.  The Care, Custody, or Control Exclusion

Hartford contends that the care, custody, or control exclusion in the Umbrella Policy bars coverage for property damage to real property in the circumstances present in this case.  The Umbrella Policy provides coverage for any damages the insured is legally obligated to pay in excess of the underlying insurance, here the Business Policy.  *Umbrella Policy*, ¶ A.1.  The care, custody, or control exclusion is stated in an

endorsement to the Umbrella Policy and provides:

> This policy does not apply to "property damage" to real property:
>
> ****
>
> 4. In the care, custody or control;
>
> Of any "insured" or as to which any "insured" is for any purpose exercising physical control.

*Umbrella Policy* [#20-2], CM/ECF page 18 of 20.

In response, Samuel notes that the complaints in the Canadian Litigation do not allege directly or clearly that Samuel was in physical control of the real property in question. I concur. In addition, as Samuel notes, this exclusion concerns only the Umbrella Policy. To the extent this exclusion is applicable, it does not exclude coverage under the Business Policy, including Hartford's duty to defend. Further, some of the claims for damages in both the Process Group case and the Flynn case potentially or arguably fall outside of the care, custody, or control exclusion, in part because ostensibly they do appear to involve real property. Hartford has not demonstrated that this exclusion bars all coverage for all property damage to any real property at issue in the Flynn Case or the Process Group Case.

### D. The Impaired Property Exclusions

Hartford cites the impaired property exclusions in both policies and contends these exclusions bar coverage for the loss of use of property or loss of production resulting from the work of a contractor. The impaired property exclusions are stated in paragraph B.1.n of the Business Policy and paragraph B.12 of the Umbrella Policy. Hartford relies on the language of the impaired property exclusions shown in the excerpt below:

15

> **n.     Damage to Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work";
>
> or
>
> (2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden or accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*Business Policy*, ¶ B.1.n; *Umbrella Policy*, ¶ B.12.

Nothing in the complaints in the Canadian Litigation indicates that Dome #5 had been put to its intended use at the time of the collapse. Therefore, there is no basis to conclude that the limitation on this exclusion, as stated in the final paragraph, is applicable to the claims against Samuel.

The Business Policy defines impaired property as follows:

> 11. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> a. The repair, replacement, adjustment or removal of "your product" or "your work";
>
> or

      b.  Your fulfilling the terms of the contract or agreement.

Hartford contends that a large portion of the claims asserted by Sifto are based on the loss of production due to the collapse of Dome #5. According to Hartford, "(a)ssuming Sifto's loss-of-use damages are truly 'property damage,' they are so only because they arise out of the loss of use of otherwise undamaged property that has been rendered less useful as a result of the Samuel's [*sic*] allegedly faulty work." *Motion for summary judgment* [#20], pp. 19 - 20.

Some of the claims in the Process Group case and the Flynn case likely are excluded from coverage by the impaired property exclusions. That possibility, however, does not support the conclusion that all of the claims in each of those two cases are excluded from coverage by the impaired property exclusions. Some damages alleged in both the Flynn case and the Process Group case do not involve impaired property damages that fall within these exclusions.

## V.  CONCLUSION & ORDERS

Viewing the undisputed facts in the record in the light most favorable to Samuel, I conclude that Hartford has not shown that the claims asserted against Samuel in the Process Group case are not potentially or arguably within the coverages provided by either the Business Policy or the Umbrella Policy. At minimum, when comparing the claims in the Process Group case and the terms of the relevant policies, there remains a genuine dispute involving material facts about whether a theory of recovery within the policy coverage has been asserted in the Process Group case. The same analysis and conclusions are applicable to the Flynn case.

Hartford has asserted two policy exclusions as covering all claims in both the

Process Group and Flynn cases. Those policy exclusions are not so broad as to cover all of these claims. Further, the care, custody, and control exclusion is part of the Umbrella Policy, but not the Business Policy. This exclusion does not preclude coverage under the Business Policy, and some of the claims in both the Process Group case and the Flynn case potentially fall outside of this exclusion. Finally, although the impaired property exclusion may exclude coverage for some types of damages claimed in the Canadian Litigation, it does not cover all types of damages claimed in that litigation. Hartford has not shown in its motion for summary judgment that a policy exclusion covers every claim asserted in the Process Group case and every claim asserted in the Flynn case. Thus, under Colorado law, Hartford has a duty to defend Samuel in both the Process Group case and the Flynn case.

In its motion for summary judgment, Samuel contends Hartford cannot establish that, as a matter of law, the claims in both the Process Group case and the Flynn case are solely and entirely within the exclusions in the insurance policy. Hartford bears the burden of establishing that the exclusions in the policy apply to each of the claims in the Process Group case and each of the claims in the Flynn case. However, Hartford has not met that burden. Viewing the undisputed facts in the record in the light most favorable to Hartford, I conclude that Samuel is entitled to summary judgment concerning Hartford's duty to defend. This is so because one or more of the claims in the Process Group case and one or more of the claims in the Flynn case potentially or arguably fall within the coverages provided by either the Business Policy or the Umbrella Policy.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Plaintiff/Counterclaim Defendant Hartford Casualty Insurance Company's Motion for Summary Judgment** [#20] filed July 22, 2013, is **DENIED**; and

2. That **Samuel Engineering Inc.'s Cross-Motion for Determination of Law** [#21] filed July 22, 2013, is **GRANTED**.

Dated March 12, 2014, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge